**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert J. Koller, et al., ) | No. CV-06-2031-PHX-FJM |
| ) | |
| Plaintiffs, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Pinnacle West Capital Corp., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiffs Robert and Velma Koller brought this action against Arizona Public Service Company ("APS") and Pinnacle West Capital Corporation, the parent company of APS, claiming that Robert contracted leukemia as a result of radiation exposure while performing his job at the Palo Verde Nuclear Generating Station ("Palo Verde"). In their first amended complaint (doc. 1), plaintiffs assert claims of negligence, strict liability and loss of consortium, contending that defendants breached their duty to advise Robert of dangers associated with his work at Palo Verde, and breached their duty to provide a reasonably safe workplace.

The court has before it defendants' motion to dismiss (doc. 10), plaintiffs' response and motion for leave to file a second amended complaint (doc. 19), and defendants' reply (doc. 22). We also have before us plaintiffs' motion to strike (doc. 12), defendants' response (doc. 13), and plaintiffs' reply (doc. 14).

In their motion to dismiss, defendants argue that this action is governed exclusively by the Price-Anderson Amendments Act of 1988, 42 U.S.C. §§ 2011, et seq., and related case law, and that the first amended complaint must be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P., because it fails to properly plead a Price-Anderson public liability action. Plaintiffs respond that the state law claims are valid, but in any event ask for leave to file a second amended complaint, adding a claim that defendants' conduct violated the Price-Anderson Act.

The Price-Anderson Act "was passed in order to protect the public and encourage the development of the atomic energy industry by limiting the potential civil liability of nuclear power plant operators and providing federal funds to help pay damages caused by nuclear accidents." In re Berg Litig., 293 F.3d 1127, 1132 (9th Cir. 2002) (quotation omitted); 42 U.S.C. § 2012. The limitation of liability and availability of indemnification are provided against a stringent, comprehensive regulatory background.

In 1988, Congress enacted the Price-Anderson Amendments Act, which explicitly created a federal cause of action for "public liability actions"[1] that arise from nuclear incidents. 42 U.S.C. § 2014(hh). As a result, the Act now provides the "exclusive means" for pursuing claims arising out of any nuclear incident. In re Berg, 293 F.3d at 1132 (citing El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 484-85 & n.6, 119 S. Ct. 1430, 1437 & n.6 (1999)); see also In re TMI Litig., 940 F.2d 832, 854 (3d Cir. 1991) (holding that a "claim growing out of any nuclear incident is compensable under the terms of the Amendments Act or it is not compensable at all") (emphasis in original)). The Act "converts an ordinary state common-law complaint into one stating a federal claim." El Paso, 526 U.S. at 484 n.6, 119 S. Ct. at 1437 n.6.

The Act further provides that "the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless

---

[1] A "public liability action" is "any suit asserting public liability," 42 U.S.C. § 2014(hh), based on a claimed exposure to nuclear material. Id. at §§ 2014(q), (w).

- 2 -

1  such law is inconsistent with [the Act]." 42 U.S.C. § 2014(hh). Many courts addressing the
2  issue have treated the complaint as stating "a single Price-Anderson Act cause of action, but
3  with sub-parts based on state law theories that are not inconsistent with the Act itself."
4  Wilcox v. Homestake Mining Co, 401 F. Supp. 2d 1196, 1199-1200 (D.N.M. 2005).

5       Based on the nature of plaintiffs' allegations, it is clear that this case is deemed a
6  public liability action, which falls squarely within the ambit of the Price-Anderson
7  Amendments Act. In their proposed second amended complaint (which we grant leave to be
8  filed), plaintiffs have now pled their state law theories of liability under the Price-Anderson
9  Act. Therefore, plaintiffs' state law theories will survive, but only to the extent they are not
10 inconsistent with the Act.

11      Defendants first contend that plaintiffs' negligence and derivative loss of consortium
12 theories must be dismissed to the extent that the claims apply a state law reasonableness
13 standard of care, which is inconsistent with federal regulations establishing permissible dose
14 limits to which nuclear workers may be exposed. See, e.g., 10 C.F.R. § 20.1201; 10 C.F.R.
15 §§ 20.1202-20.1203. According to defendants, permitting states to apply their own nuclear
16 regulatory standards to define a nuclear operator's duty would directly conflict with the
17 objectives of the Act.

18      It is well established that "the safety of nuclear technology [is] the exclusive business
19 of the Federal Government," Pacific Gas Elec. Co. v. State Energy Res. Conservation & Dev.
20 Comm'n, 461 U.S. 190, 208, 103 S. Ct. 1713, 1724 (1983), which has "occupied the entire
21 field of nuclear safety concerns." Id. at 212, 103 S. Ct. at 1726. Every federal circuit that
22 has considered the appropriate standard of care under the Act agrees that federal safety
23 regulations should control. See, e.g., O'Conner v. Commonwealth Edison Co., 13 F.3d
24 1090, 1105 (7th Cir. 1994) (holding that "the application of something other than the federal
25 safety regulations as a standard of care is inconsistent with the Price-Anderson scheme"); In
26 re TMI Litig., 940 F.2d at 859 ("states are preempted from imposing a non-federal duty in
27 tort, because any state duty would infringe upon pervasive federal regulation in the field of
28 nuclear safety, and thus would conflict with federal law"); Nieman v. NLO, Inc., 108 F.3d

1546, 1553 (6th Cir. 1997) ("state law claims cannot stand as separate causes of action"); Roberts v. Florida Power & Light Co., 146 F.3d 1305, 1308 (11th Cir. 1998) ("federal safety regulations conclusively establish the duty of care owed in a public liability action").

Plaintiffs rely on Cook v. Rockwell Int'l Corp., 273 F. Supp. 2d 1175 (D. Colo. 2003), which recognized that its holding "is contrary to the existing weight of authority," id. at 1193, but concluded that Price-Anderson neither expressly nor impliedly preempts state law standards of care. Id. at 1180. Although acknowledging that "[i]t was well-established . . . that the federal government completely occupies the field of nuclear safety regulations and has thereby preempted states from enforcing their own nuclear safety regulations," the court nevertheless found no conflict or frustration of congressional purpose in the application of state tort standards of care. Id. at 1190. The Cook court derived much of its reasoning from a case predating the 1998 Amendments to the Act, Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 104 S. Ct. 615 (1984), in which the Court held that the pre-amendment Act did not preempt an award of punitive damages under state law. The Court did not address, however, the preemption of a state law standard of care, particularly in light of 42 U.S.C. § 2014(hh). In fact, Silkwood's continued precedential value is unclear.[2] See, e.g., Nieman, 108 F.3d at 1552 (stating that there "is no Supreme Court precedent exactly on point" regarding the appropriate standard of care); O'Conner, 13 F.3d at 1105 n.13 (Silkwood's holding partially overruled by the Amendments Act); Kerr-McGee Corp. v. Farley, 115 F.3d 1498, 1503 (10th Cir. 1997) ("[w]hile not otherwise superseding the decision in Silkwood, the 1988 Amendments can be read in part as a congressional response to the result in Silkwood").

We agree with the clear weight of authority and conclude that federal law preempts states from imposing any standard of care different from the federal safety standards. Congress has enacted detailed legislation and established a highly specialized administrative agency, the Nuclear Regulatory Commission, to promulgate and enforce regulations to

---

[2]Silkwood's holding on punitive damages was overruled by the Amendments Act, which specifically bars punitive damages. See 42 U.S.C. § 2210(s) ("No court may award punitive damages in any action with respect to a nuclear incident.").

1 implement the Act. Allowing a complaint based on a state reasonableness standard of care
2 would "put juries in charge of deciding the permissible levels of radiation exposure and,
3 more generally, the adequacy of safety procedures at nuclear plants–issues that have
4 explicitly been reserved to the federal government." In re TMI Gen. Publ. Utils. Corp., 67
5 F.3d 1103, 1115 (3d Cir. 1995) (citing Pacific Gas, 461 U.S. at 212, 103 S. Ct. at 1726)).
6 Moreover, adoption of such a vague standard "would give no real guidance to operators and
7 would allow juries to fix the standard case by case and plant by plant." Id.

8 While Congress allows state law to provide "the substantive rules for decision," 42
9 U.S.C. § 2014(hh), the application of such state law must fit within the carefully constructed
10 regulatory framework. "State safety regulation is not preempted only when it conflicts with
11 federal law." Pacific Gas, 461 U.S. at 212, 103 S. Ct. 1726. Instead, "[w]hen the federal
12 government completely occupies a given field or an identifiable portion of it, as it has done
13 [with nuclear safety], the test of preemption is whether the matter on which the state asserts
14 the right to act is in any way regulated by the federal government." Id. at 212-13, 103 S. Ct.
15 at 1726-27 (internal quotations omitted). It is indisputed that Congress has imposed
16 pervasive safety standards on nuclear operators. A state standard of care that would permit
17 a jury to conclude that a nuclear operator is negligent, even when it complies with these
18 comprehensive regulatory standards, conflicts directly with the Act. Therefore, we conclude
19 that the standard of care in a negligence claim (and a derivative claim for loss of consortium),
20 asserted under the Price-Anderson Amendments Act, must be analyzed in the context of the
21 federal regulatory safety standards. Defendants' motion to dismiss the negligence theory of
22 liability is granted in part, to the extent plaintiffs' claim rests on a state tort standard of care.

23 Similarly, we conclude that plaintiffs' strict liability theory is also inconsistent with
24 Price-Anderson because it is premised on the theory that defendants could be found liable
25 without first establishing that they breached the federally-imposed permissible dose limits.
26 See, e.g., Roberts, 146 F.3d at 1308; Bohrmann v. Maine Yankee Atomic Power Co., 926 F.
27 Supp. 211, 221 (D. Me. 1996) ("Plaintiffs' claim pursuant to a strict liability theory is
28 inconsistent with the federal regulatory scheme because Plaintiffs could recover pursuant to

1  such a claim without first establishing that Defendant breached a federally imposed standard
2  of care."); McLandrich v. So. Cal. Edison Co., 942 F. Supp. 457, 465 n.7 (S.D. Cal. 1996)
3  ("The Court finds that applying the 'ultrahazardous activities' doctrine here would be clearly
4  inconsistent with the Price-Anderson Act, as it would make nuclear power plant licensees
5  strictly liable without the 'safe haven' provided by the dose limits regulations.").
6  Accordingly, we dismiss plaintiffs' strict liability theory of recovery.

7  Therefore, **IT IS ORDERED GRANTING** plaintiffs' motion for leave to file a
8  second amended complaint (doc. 19).

9  **IT IS FURTHER ORDERED DENYING** plaintiffs' motion to strike (doc. 12).

10  **IT IS FURTHER ORDERED GRANTING** defendants' motion to dismiss plaintiffs'
11  state law claims of negligence, loss of consortium and strict liability.  **IT IS FURTHER**
12  **ORDERED GRANTING IN PART** defendants' motion to dismiss plaintiffs' negligence and
13  loss of consortium theories of liability asserted under the Price-Anderson Amendments Act,
14  but only to the extent such theories are based on a state law standard of care (doc. 10).

15  **IT IS FURTHER ORDERED GRANTING** defendants' motion to dismiss plaintiffs'
16  strict liability theory of recovery (doc. 10).

17  Accordingly, only the state law theories of negligence and loss of consortium asserted
18  under the Price-Anderson Amendments Act remain in this case.  The federal regulatory
19  safety standards will provide the relevant standard of care.

20  DATED this 6th day of February, 2007.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge

- 6 -